IN THE UNITED STATES DISTRICT COURT

OF WESTERN PENNSYLVANIA

UNITED STATES OF AMERICA,              CRIMINAL ACTION

        vs.                          No. 04-53 Erie

JONTEE DAMON RUSSELL,

        Defendant.

===============================

Transcript of GUILTY PLEA
commencing on FEBRUARY 1, 2005
United States District Court, Erie, Pennsylvania
BEFORE:  HONORABLE MAURICE B. COHILL, JR., DISTRICT JUDGE

APPEARANCES:

For USA:                          Marshall Piccinini, Esq.
                                  Assistant U.S. Attorney
                                  Federal Courthouse
                                  17 South Park Row
                                  Erie, PA  16501


For the Defendant:                Anthony Logue, Esq.
                                  2622 Parade Street
                                  Erie, PA  16504


Court Reporter:                   Karen M. Earley, RDR-CRR
                                  619 U.S. Courthouse
                                  Pittsburgh, PA  15219
                                  412-201-2660



Proceedings reported by mechanical stenography.
Transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2   (February 1, 2005, 9:30 a.m.   In open court.)
 3              THE COURT:  Mr. Logue, as I understand it,
 4   Mr. Russell has indicated a desire to enter a plea of guilty
 5   to Count 1 of the indictment, is that correct?
 6              MR. LOGUE:  That is correct.
 7              THE COURT:  Mr. Russell, would you stand and be
 8   sworn, please.
 9        JONTEE DAMON RUSSELL, DEFENDANT HEREIN, WAS SWORN.
10              THE COURT:  Mr. Russell, do you understand that now
11   that you have been sworn, your answers to my questions are
12   being given under oath, and you would be subject to the
13   penalties of perjury or making a false statement if you don't
14   answer truthfully, do you understand that?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Can you state your name, please.
17              THE DEFENDANT:  Jontee Damon Russell, Your Honor.
18              THE COURT:  What is your date of birth?
19              THE DEFENDANT:  4-4-84.
20              THE COURT:  What was your last address?
21              THE DEFENDANT:  428 East 13th Street.
22              THE COURT:  Erie?
23              THE DEFENDANT:  Yes, sir.
24              THE COURT:  How far did you go in school?
25              THE DEFENDANT:  To 11th grade, sir.
```

1          THE COURT:  Mr. Logue, have you been able to

2    communicate with your client to the sense he understands you,

3    and you understand him?

4          MR. LOGUE:  Yes, Your Honor.

5          THE COURT:  Mr. Russell, have you currently or been

6    under the care of a physician or psychiatrist?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Have you been hospitalized or treated

9    for a narcotic condition?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Have you been hospitalized or treated

12    for alcohol abuse?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Have you been hospitalized or treated

15    for mental illness?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Are you under the influence of any

18    narcotic drug, medicine, pills, or alcoholic beverage today?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Have you taken any drugs, medicine, or

21    pills or drunk any alcoholic beverages in the past 24 hours?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  How do you feel physically and mentally

24    right now?

25          THE DEFENDANT:  I'm fine, sir.

```
1              THE COURT:  You clearly understand exactly what is

2   happening here now?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do either of you attorneys have any

5   doubt as to the defendant's competence to plead at this time?

6              MR. LOGUE:  Not on behalf of the defendant, no.

7              MR. PICCININI:  The government does not, Your

8   Honor.

9              THE COURT:  Based on the answers to the foregoing

10  questions, we find the defendant is competent to plead.

11             Mr. Russell, have you had an ample opportunity to

12  discuss your case with your attorney?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Have you told him all the facts in

15  connection with the charges?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Are you satisfied with the job that he

18  has done for you?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  I want to go over with you now just

21  what your constitutional rights would be if this case were to

22  go to trial, Mr. Russell.

23             First of all, do you understand under the

24  constitution and the laws of the United States, you are

25  entitled to a speedy and public trial by a jury of the charges
```

1    contained in the indictment?

2                    THE DEFENDANT:  Yes, sir.

3                    THE COURT:  Do you understand that you have the

4    right to an attorney at every stage of the proceedings in your

5    case, and that if at any time you can't afford an attorney,

6    one will be provided for you without charge?

7                    THE DEFENDANT:  Yes, sir.

8                    THE COURT:  Do you understand that at your trial,

9    you would be presumed to be innocent, and the government would

10   be required to prove you guilty by competent evidence and

11   beyond a reasonable doubt to the satisfaction of the judge and

12   the unanimous jury?

13                   THE DEFENDANT:  Yes, sir.

14                   THE COURT:  Do you understand that being presumed

15   to be innocent means you would not have to prove you were not

16   innocent?

17                   THE DEFENDANT:  Yes, sir.

18                   THE COURT:  Do you understand that at the trial,

19   the witnesses for the government would have to come to court

20   and testify in your presence, and your attorney or you can

21   cross-examine the witnesses for the government, object to

22   evidence offered by the government, and offer evidence on your

23   behalf?

24                   THE DEFENDANT:  Yes, sir.

25                   THE COURT:  Do you understand that at the trial,

1    you would be entitled to compulsory process to call witnesses,

2    that is, you could subpoena witnesses and compel them to come

3    to court to testify for you?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Do you understand that at the trial,

6    you would have the right to testify, if you chose to do so,

7    but you would also have the right not to testify, and no

8    inference or suggestions of guilt could be drawn from the fact

9    that you did not testify?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  If you do enter a plea of guilty today,

12    you understand that you will have to waive your right to a

13    trial and the other rights I just described, and there will

14    not be a trial of any kind, and I will enter a judgment of

15    guilty and sentence you on the basis of your guilty plea after

16    considering a presentence report?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  If you do enter a plea today, do you

19    understand you will also have to waive your right not to

20    incriminate yourself since I will ask you questions about what

21    you did in order to satisfy myself that you are guilty, and

22    you will have to acknowledge your guilt on the record?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  Do you understand that any statements

25    regarding the event you may have made to the United States

1  attorney during the course of any plea negotiations cannot be

2  used against you in a trial in this case?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Having discussed these rights with you,

5  is it still your wish to enter a plea of guilty today?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And I take it you received a copy of

8  the indictment, the charge against you?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  And you have gone over that with

11 Mr. Logue?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Just so it is clear on the record, we

14 have gone over this in court.  I am going to read Count 1

15 aloud.

16         It says, The Grand Jury charges on or about July

17 30th, 2004, in the County of Erie in the Western District of

18 Pennsylvania, the defendants John T. Damon Russell and Lisa

19 Marie Dacus did knowingly, intentionally, unlawfully possess

20 with intent to distribute and distribute five grams or more of

21 a mixture or substance containing a detectable amount of

22 cocaine base in the form commonly known as crack, a Scheduled

23 II controlled substance, in violation of Title 21, United

24 States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii), and

25 Title 18, United States Code, Section 2.

1    That is what the indictment says, and I want to go
2    over with you just what the government would have to prove in
3    order to get a conviction if the case were to go to trial.  Do
4    you understand that?

5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  Okay.  Now, in any criminal case, the
7    government has to prove what are called elements of the
8    offense, and for the offense of possession with intent to
9    distribute, first of all, on or about the date set forth, that
10   the defendants distributed or possessed with intent to
11   distribute the controlled substance charged in the indictment.
12   In this case, it's crack.

13   Secondly, that you did this knowingly and
14   intentionally.

15   Third, cocaine base is a Scheduled II controlled
16   substance pursuant to Title 21, United States Code, Section
17   812(c) and Schedule Roman Numeral II (a)(4).

18   And, fourth, that the mixture or substance
19   containing a detectable amount of cocaine was five grams or
20   more.

21   Those are the four elements that the government
22   would have to prove.  Do you understand that?

23   THE DEFENDANT:  Yes, sir.

24   THE COURT:  And has to present that beyond a
25   reasonable doubt to the satisfaction of the judge and the

1    jury.

2              Now, I want to go over with you also the penalties

3    here.  There are two kinds of penalties that we concern

4    ourselves with.

5              First, what the statute says, what the United

6    States Criminal Code says; and secondly, we have Sentencing

7    Guidelines, and the Sentencing Guidelines just as recently as

8    January were found to be unconstitutional by the United States

9    Supreme Court, but at the same time, they said the Courts are

10   supposed to regard these as advisory.

11             I'm going to go over with you a little more about

12   the Sentencing Guidelines in a moment.  Here is what the

13   statute says.  The statute calls for a term of imprisonment of

14   not less than five years, to a maximum of 40 years, a fine not

15   to exceed $2 million, and a term of supervised release of at

16   least four years.

17             Now, has he ever been convicted of a felony drug

18   conviction before this?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  There's additional penalties if it is

21   your second conviction.  I will not bother with that then.

22             The Court also must impose a mandatory special

23   assessment of $100.  Those are the statutory penalties.

24             Now, as I said, these guidelines are kind of

25   unusual now.  We used to be guided by them pretty much

1  completely, but since the Supreme Court says they are

2  unconstitutional, we are not required to follow them, but at

3  the same time, the Supreme Court wants us to consider them to

4  be advisory.

5            Have you and Mr. Logue talked about how the

6  Sentencing Guidelines might apply in your case?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  You understand that I won't be able to

9  determine what the guideline advisory calls for in your case

10 until after a presentence report has been completed and you

11 and the government have had an opportunity to challenge the

12 facts that are reported by the probation officer.  Do you

13 understand that?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Do you understand that the sentence

16 might be different from what either your attorney or the

17 United States attorney might have predicted?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  You understand that after it's been

20 determined what guideline applies in the case, the judge has

21 the authority in some circumstances to impose a sentence that

22 is more severe or less severe than the sentence called for by

23 the guidelines?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  You understand under some

1    circumstances, you or the government might have the right to

2    appeal any sentence that I might impose?

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  Do you understand that parole has been

5    abolished, and if you are sentenced to prison, you would not

6    be released on parole?

7                    THE DEFENDANT:  Yes, sir.

8                    THE COURT:  Mr. Russell, has anyone threatened you

9    or anything else or forced you in any way to indicate you want

10   to plead guilty in this case?

11                   THE DEFENDANT:  No, sir.

12                   THE COURT:  Has he made a confession or admissions

13   to police or other representatives of the government?

14                   MR. PICCININI:  He had.  On November 19, 2004 in

15   the presence of counsel, he provided a statement.

16                   THE COURT:  If for any reason you feel any

17   confession or admission of statement you made was not freely

18   and voluntarily made, you would be entitled to have an

19   evidentiary hearing or what we sometimes call a suppression

20   hearing prior to trial.  They would have the Court determine

21   if the confession or admission or statement was freely and

22   voluntarily made.

23                   Would you wish me to conduct a hearing like that?

24                   THE DEFENDANT:  No, sir.

25                   THE COURT:  And I take it, Mr. Piccinini, there is

1    a plea agreement here?

2             MR. PICCININI:   There is, Your Honor.

3             THE COURT:   I'm going to ask him to tell us what is

4    in that agreement, not read it, but tell me what's in it, and

5    I'm going to ask if you gentlemen both agree with what he

6    said.

7             MR. PICCININI:   I marked the document Government

8    Exhibit 1, and the significant terms of it include, first of

9    all, recognition that the guidelines are advisory but an

10   indication the Court will consider guidelines at the time of

11   the sentence.

12            In Paragraph A1, the defendant sets forth his

13   intention to plead guilty to the Count 1 indictment.  There is

14   various language in the plea letter that sets forth the

15   defendant's intention to provide or attempt to provide

16   cooperation to the United States.

17            In addition to Paragraph A1, the defendant waives

18   his right to take a direct appeal from his conviction subject

19   to the following conditions:

20            Those conditions being, one, if the United States

21   appeals, he may appeal.

22            Second, he may also appeal if the sentence that you

23   impose exceeds the statutory maximum or that it unreasonably

24   exceeds the maximum guideline range determined by the Court.

25            In addition, the defendant waives his right to file

1  a habeas petition under 28 USC, Section 2255, attacking the

2  conviction.

3        In addition to Paragraph B2, the government sets

4  forth its intention to recommend a three level reduction for

5  acceptance of responsibility here today.

6        In Paragraph B3, the government sets forth its

7  intention to evaluate the nature, timeliness, and extent of

8  any cooperation that's provided on Mr. Russell's behalf and

9  consider whether at the time of the sentencing, within the

10 U.S. Attorney's discretion, to file a 5K motion.

11       In Paragraph C1, the government sets forth the

12 maximum and mandatory minimum penalties that the Court has

13 explained today, as well as Paragraph C2, the parties

14 stipulate that the amount of controlled substance, cocaine

15 base, attributable to the defendant's conduct in this case

16 would be 9.1 grams.

17       Those would be the significant terms of the plea

18 letter, and I would provide it to counsel and the defendant

19 for their signature at this time.

20  (Whereupon, defense counsel and defendant sign the form.)

21       MR. PICCININI:  Your Honor, I would request

22 admission of evidence of Government Exhibit 1.

23       THE COURT:  We'll admit Exhibit 1.  Mr. Logue,

24 Mr. Piccinini's recital of the plea agreement, is that

25 consistent with your understanding?

1          MR. LOGUE:  Yes, it is.

2          THE COURT:  Is that consistent with your

3     understanding, Mr. Russell?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  One thing, when I was going over with

6     you the elements that the government would have to prove, I

7     omitted something I wanted to say.

8          The statute uses the term, the words, "knowingly

9     and willfully" in describing what's required to prove the

10    case.  I just want to make it clear to you the word

11    "knowingly" in the law means to do something voluntarily and

12    deliberately, not mistakenly or inadvertently; and an act is

13    to be said willfully in the law if it's done voluntarily and

14    intentionally and with the specific intent to do something

15    that the law forbids, that is to say, with bad purpose, to

16    either disobey or disregard the law.

17         In other words, the jury would have to consider

18    that.  Do you understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Mr. Russell, has anyone made any

21    representation or promise to you other than what is in that

22    plea agreement that induced you to plead guilty?

23         THE DEFENDANT:  Would you repeat that.

24         THE COURT:  Yes.  Has anybody made any

25    representation or promise to you other than the promises that

1     are in the plea agreement that induced you to plead guilty?

2          Has anybody said anything to you to talk you into

3     this outside what is in that plea agreement?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  It's very important I have been told

6     all of the relevant bargaining that has taken place because I

7     want to guard against any possible misunderstanding of the

8     terms of the plea bargain.

9          Is there any representation made by the United

10    States attorney that is not absolutely clear in your mind?  Do

11    you understand everything that is in that agreement?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Do you understand that any

14    recommendation of sentence that might have been agreed to by

15    your lawyer and the prosecution or any agreement by the

16    government not to oppose your attorney's requested sentence is

17    not binding on me, and you might on the basis of your guilty

18    plea receive up to the maximum sentence permitted by law?  Do

19    you understand that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Do you understand that if I choose not

22    to impose a sentence that might be recommended by the

23    prosecutor or by your lawyer and impose a more severe

24    sentence, you will not, therefore, be entitled to withdraw

25    your guilty plea?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Has anyone made any prediction or

3    promise to you as to what your sentence will be?

4            THE DEFENDANT:  No, sir.

5            THE COURT:  Have any other out-of-court promises,

6    representations, or agreements been made which require you to

7    respond untruthfully to any of my questions?

8            For instance, has anyone told you to tell me that

9    no promise of leniency was made when, in fact, a promise was

10   so made?

11           THE DEFENDANT:  No, sir.

12           THE COURT:  You understand that you may not at a

13   later date after today claim that there were any promises,

14   representations, agreements, understandings, or threats made

15   by any person that motivated or caused you to enter this plea

16   other than those that you had the opportunity to tell me about

17   here and now in open court?  Do you understand that?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Do you understand that no one can make

20   any promises for me as to how I will dispose of the case?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Has anyone promised or predicted

23   leniency with respect to any sentence that I might impose?

24           THE DEFENDANT:  No, sir.

25           THE COURT:  It's very important because if anyone

1    has predicted or promised leniency, I'm putting you on notice

2    right now that any representation they may have made is not

3    binding on me, and I will sentence you according to my own

4    conscience and following the law.  Do you understand this?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  What made you decide to plead guilty,

7    Mr. Russell?

8              THE DEFENDANT:  Because, sir, I was wrong, and yes,

9    I did sell crack cocaine, so I am going to take responsibility

10   for my actions.

11             THE COURT:  Did you discuss pleading guilty with

12   your attorney?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  I'm going to ask Mr. Piccinini now to

15   tell me what the government will be expected to prove, and I

16   will ask you if you agree with his statement of what the

17   government will prove.

18             MR. PICCININI:  Thank you, Your Honor.

19             If this matter proceeded to trial, the government

20   would provide testimony from members of the Erie Area Gang Law

21   Enforcement Safe Street Task Force that would provide

22   information concerning the July 30th, 2004 sale of crack

23   cocaine by the defendant to a confidential source.

24             On that particular date, a controlled purchase of

25   crack cocaine was arranged by a consensually recorded phone

1  conversation which was made to the residence of Mr. Russell

2  where the co-defendant Ms. Dacus answered the phone.

3          A previous arrangement has been made for the

4  purchase of crack cocaine and the amount of money that would

5  be necessary for that purchase.  After Ms. Dacus fielded that

6  phone conversation, during which both the source and Ms. Dacus

7  used the term "Jolly Ranchers" as being a code word for the

8  purchase of crack cocaine, the detail of the arrangements were

9  then made, at which time law enforcement officers conducted

10 surveillance.

11         The confidential source wore a body recorder and

12 went to Mr. Russell's residence where the source itself had

13 actually purchased crack cocaine from the defendant for the

14 funds that were provided to him.  The crack cocaine after

15 having been obtained from Mr. Russell was sent to the

16 Pennsylvania State Police Crime Laboratory for testing.

17         Testimony would come from forensic scientist Ted

18 Williams who would indicate the quantity of cocaine was 9.1

19 grams and contained cocaine base commonly known as crack.

20         In addition, the testimony would include testimony

21 from Special Agent Jason Crouts of the FBI indicating on

22 November 19, 2004, Mr. Russell was interviewed and admitted

23 his involvement in this offense.  That would be the nature of

24 the government's proof.

25         THE COURT:  Is that a fair statement of what

1   happened here, Mr. Russell?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Is that consistent with your

4   understanding, Mr. Logue?

5              MR. LOGUE:  Yes, Your Honor.

6              THE COURT:  You do admit you were selling cocaine,

7   crack, you knew what it was, and you sold it to the person

8   that bought it, is that right?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  In reviewing all the facts we discussed

11  here today, Mr. Russell, is it still your wish to enter a plea

12  of guilty and waive your right to a trial by jury?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Mr. Logue, how long have you consulted

15  with the defendant?

16             MR. LOGUE:  Your Honor, I think approximately five

17  or six months.

18             THE COURT:  And from the facts he has told you, do

19  you concur in his plea of guilty?

20             MR. LOGUE:  Yes, I do.

21             THE COURT:  Do you know of any reason he should not

22  plead guilty?

23             MR. LOGUE:  No.

24             THE COURT:  Do you have any question you want to

25  ask me, Mr. Russell?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Since you do acknowledge you are, in

3    fact, guilty as charged in Count 1 of the indictment, and

4    based on our discussion today, I find you know your right to a

5    trial, what the maximum possible punishment is, and you are

6    voluntarily pleading guilty.  I will accept your guilty plea

7    and enter a judgment of guilty on your plea.  I will ask you

8    to sign the endorsement on the back of the indictment.

9          (Whereupon, defense counsel and defendant sign form.)

10          THE COURT:  We note that Mr. Russell has signed the

11    endorsement indicating he is now withdrawing his plea of not

12    guilty entered December 1st, 2004 and now pleads guilty this

13    1st day of February 2005.

14          I'm going to order a presentence report here,

15    Mr. Russell, and Mr. Rea, the gentleman over at that table is

16    the probation officer who will be preparing that report.  I

17    urge you to cooperate with him and answer his questions

18    because what's in that report is going to be very important as

19    far as what the sentence will be.

20          I have been given a sentencing date of May 11, 2005

21    at 11 a.m., May 11, 2005 at 11 a.m.

22          Is there anything further?

23          MR. PICCININI:  There is nothing further, Your

24    Honor.

25          (Whereupon, the above hearing was concluded.)

- - -

I hereby certify by my original signature herein that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


S/Karen M. Earley

Karen M. Earley, RDR-CRR

Official Court Reporter